## MILTON B. DELCHER *v.* STATE OF MARYLAND.
### [No. 45, October Term, 1931.]

476

477

*Decided January 13th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*William Curran* and *Max Sokol,* with whom were *Harry W. Nice* and *Malcolm J. Coan* on the brief, for the appellant.

*William L. Henderson, Assistant Attorney General,* and *Charles C. G. Evans, Assistant State's Attorney for Baltimore City,* with whom were *Wm. Preston Lane, Jr., Attorney General, Herbert R. O'Conor, State's Attorney,* and *Elmer J. Hammer, Assistant State's Attorney,* on the brief, for the State.

PATTISON, J., delivered the opinion of the Court.

Three indictments were returned by the grand jury of Baltimore City against the appellant, Milton B. Delcher, a vice-president of the Chesapeake Bank of Baltimore City, for certain alleged criminal transactions whereby the accused obtained money from said bank prior to the appointment of the receiver.

In the first of these indictments, No. 173 on the 1931 docket of the Criminal Court of Baltimore City, the accused was charged with larceny and false pretense in respect of certain transactions whereby "Young's System, a corporation," obtained certain funds from the bank. The appellant,

by the second indictment, No. 174, was charged with said offenses in respect of two transactions whereby he received certain funds of the bank, which were used by him in the purchase, through W. W. Lanahan & Co., brokers, of certain shares of stock for his individual account. The third indictment, No. 175, charged larceny and false pretense in respect of certain transactions whereby "Charles Decorators, Inc., a corporation," in which the accused was financially interested, obtained certain funds from the bank on the strength of an alleged false representation made by the accused to the bank's board of directors. The State and defense agreed that the three indictments should be tried by the same jury at the same time.

The verdict of the jury upon the charges contained in indictment No. 173 was not guilty. The verdict as to the second indictment, No. 174, was guilty on the second and fourth counts, the larceny counts, but not guilty on the first and third, the false pretense counts. As to the third indictment, No. 175, the jury found the accused guilty on the first, third, fifth, seventh, ninth and eleventh counts of the indictment, the false pretense counts, but not guilty on the others, the larceny counts. The defendant was thereafter sentenced to a term of five years in the Baltimore City Jail on the conviction in each of said indictments, the sentences to run concurrently. From that judgment an appeal was taken to this court. Thereafter, motions to strike out the verdicts, judgments and sentences upon those counts in the two indictments upon which the appellant had been found guilty were filed, and overruled by the court. And from the rulings of the court thereon appeals were taken to this court. The four appeals were subsequently consolidated in one record by order of this court passed on July 2nd, 1931.

The indictments being filed, bills of particulars were demanded by the defendant, and, upon the filing of the same, exceptions taken thereto were overruled. Whereupon a demurrer was filed to each count of the indictments, and these,

too, were overruled. Thereafter the defendant moved to quash the indictments, which motions were also overruled.

The indictment in No. 174 contained four counts. The first and third charged the larceny of the respective sums therein named, alleging the same to be the property of the Chesapeake Bank. The second and fourth counts charged, in the usual form, the obtaining of the sums named therein by false pretense.

The bill of particulars was furnished the defendant under section 555 of article 27 of the Code, which gave to him a statement of the false pretense intended to be given in evidence, as well as the names of the witnesses, and it is, we think, in full compliance with the statute; but, should it be held otherwise, the defendant was not thereby hurt, inasmuch as he was acquitted upon those counts of the indictment (*Burgess v. State,* 161 Md. 162, 155 A. 153; 31 C. J., sec. 553, page 880, note 2); and the same may be said as to the action of the court in its ruling upon the motions to quash. With the false pretense counts eliminated from consideration, the demurrer to the remaining larceny counts, which were in the usual form, was properly overruled. In fact, the defendant in his brief is silent upon the action of the court in its rulings upon the bill of particulars, the motion to quash, and the demurrer to the indictment, in No. 174. He confines his discussion therein to the action of the court in overruling the bill of particulars, the motion to quash, and the demurrer to the indictment, in No. 175.

This last-mentioned indictment contained twelve counts. In the first, third, fifth, seventh, ninth and eleventh, the traverser was charged with obtaining the respective sums of money therein named by false pretense, and upon these counts he was found guilty. In the other counts he was charged with larceny, and was found not guilty.

The State, in its bill of particulars, in answer to the demand of the defendant, as to the first count of the indictment, No. 175, stated that the traverser, Milton B. Delcher, vice-president of the Chesapeake Bank, engaged in the banking

business in that city, did from on or about the 7th of November, 1928, up to and including the 31st day of December, 1928, obtain from the bank the sum of money therein named upon the representation made by him to the bank and its directors "that one Bruno H. Buckholz, who was then and there the president of the Charles Decorators, Inc., was an antique dealer having a place of business on North Charles Street, in said city, by the name of Buckholz, and that the said Bruno H. Buckholz was a man of substantial means and financial responsibility; whereas, in truth and in fact, as he, the said Milton B. Delcher, then and there well knew, the said Bruno H. Buckholz was not an antique dealer on North Charles Street, and was not a man of substantial means and financial responsibility, and was not the antique dealer named Buckholz on North Charles Street;

"And that the said Milton B. Delcher did, in addition, during the above-mentioned period, approve, okay and direct the honoring and payment by the bank of certain checks of the Charles Decorators, Inc., drawn on the Chesapeake Bank of Baltimore, a corporation, as and when the same were received by or presented at the said bank for payment, when he, the said Milton B. Delcher, then and there well knew that the said Charles Decorators, Inc., did not (when the said checks were received and presented for payment as aforesaid) have sufficient money on deposit with or at the said Chesapeake Bank of Baltimore, a corporation, to meet and pay the same, and knew that the financial condition, status and circumstances of the said Charles Decorators, Inc., was not such as to warrant said bank honoring, meeting and paying said checks, as aforesaid."

The other counts of the indictment, wherein the traverser is charged with obtaining money under false pretense, differ from the first only as to the period in which the money was obtained and in the amount so obtained.

Exceptions were filed to the bill of particulars as to the first, third, fifth, seventh, ninth and eleventh counts of the indictments, whereby the defendant was charged with obtaining money under false pretense, the grounds of the exceptions being:

(1) Because the said alleged bill of particulars does not "sufficiently inform the defendant of the charges in said counts that he has to answer in the trial of said cause."

(2) Because it "does not clearly, properly and sufficiently designate or describe the means, instruments, methods or instrumentalities alleged to have been used in the perpetration of the alleged false pretense so that there can be no mistake as to the identification of the means, instruments, methods and instrumentalities that may be produced in evidence by the State in support of said" counts of the indictment.

(3) Because the allegations of the bill of particulars contained therein "are insufficient in law to sustain" said counts in the indictment and the offenses charged therein.

(4) Because the allegations in said bill of particulars as to the counts of the indictment "do not constitute a criminal offense under the Laws of the State of Maryland, nor do the allegations * * * constitute the offense of false pretense" under said laws.

There was a further ground contained in the exceptions—that the bill of particulars did not contain a list of names of the witnesses, as required by the statute, but it is admitted by the defendant in his motion in arrest of judgment that the names of such witnesses were furnished him.

In *Jules v. State,* 85 Md. 312, 36 A. 1027, 1029, where the defendant was charged with obtaining money under false pretenses, this court said: "The office of a bill of particulars like this is—First, to inform the defendant of the names of the witnesses the State expects to call; and, secondly, to furnish him with a statement of the false pretenses intended to be relied on, and given in evidence, Code, art. 27, sec. 288. It was the theory of the State, and during a part of the argument also that of the defense, that a bill of particulars of this kind is no part of the pleading, and therefore not subject to demurrer. And that this view is correct is apparent from the nature of the statement of particulars, which, as we have seen, is intended only to furnish the false pretenses

intended to be given in evidence, and the names of the witnesses. As is said in section 702, *Whart. Cr. Pl.*: 'The adoption of such bills, instead of the exacting of increased particularity in indictments, is productive of several advantages. It prevents much cumbrous special pleading and consequent failures of justice, as no demurrer lies to bills of particulars; and it gives to the defendant, in plain, unartificial language, notice of the charge he is to meet'."

In this case the bill of particulars, we think, fully meets the requirements above stated. The statement of the facts found in the bill of particulars furnished under the statute sufficiently enabled the defendant to prepare his defense, 31 *C. J.* 751 and 752. And we find no error in the court's action in overruling the defendant's motion to quash, the grounds of which were practically the same as those contained in the exceptions to the bill of particulars.

The demurrer to the indictment is based chiefly upon the grounds: (1) That the false pretense counts of the indictment, when read in conjunction with the bill of particulars, show each count to be bad because it attempts to charge a series of false pretenses rather than the one act of false pretense; (2) that, by an examination of the second paragraph of the bill of particulars taken in conjunction with each false pretense count of the indictment, it will be shown that the charge therein stated is larceny rather than false pretenses; and (3) that there was not only a mingling in the same count of separate and distinct crimes of false pretenses, but there was a mingling in the same count of the crime of false pretenses with the crime of larceny.

A bill of particulars is no part of the indictment or pleading, and it is, we think, well settled that, where the indictment is in the usual form and not demurrable on its face, it does not become so when considered in connection with the bill of particulars. Nor can a defective indictment be made sufficient by a bill of particulars. *Dunlop v. United States,* 165 U. S. 486, 17 S. Ct. 375, 41 L. Ed. 799; *Com. v. Davis,* 11 Pick. (Mass.) 432; *Jules v. State,* 85 Md. 305, 36 A. 1027; *State v. Lehigh Valley R. Co.,* 94 N. J. Law, 171,

111 A. 257; *State v. Dix,* 33 Wash. 405, 74 P. 570; 31 *C. J.* 753; and we do not find that the indictment violates the rule that not more than one offense can be charged in one count of the indictment.

Each of the false pretense counts charges that the alleged offense was committed at the specific time therein stated. In the first count, the offense is alleged to have been committed on the 31st day of December, 1928; the third count on the 29th day of June, 1929; the fifth on the 31st of December, 1929; the seventh on the 19th of May, 1930; the ninth on the 7th of October, 1930; and the eleventh on the 14th of November, 1930. It is true that the bill of particulars alleges, and the proof shows, that the amount alleged in each of the false pretense counts was received on various days and times preceding, and inclusive of, the day named in the indictment. In other words, the amount named in the indictment was the aggregate amount obtained by the traverser at different times through a period immediately preceding and inclusive of the date mentioned therein; for which reason it is contended by the appellant that the indictment is defective because of duplicity, he going so far as to claim that there should have been a count for each of the items obtained at the different times, which would have necessitated, as disclosed by the evidence, the insertion of 554 counts in the indictments. The disclosures made by the bill of particulars or the evidence offered, or by both, that the amount named in the indictment was obtained at times prior to and inclusive of that date, would not, for the reasons already stated, render the indictment, in which the time was specifically alleged, demurrable. And, while we do not decide, as there is no necessity for so doing, it would hardly seem essential to the validity of the indictment that there should be a separate count covering each of the items in a series of continuing offenses, had those facts appeared upon the face of the indictment.

After the disposition of the exceptions to the bill of particulars, and the motion to quash and the demurrer to the indictment, one Franklin Cole, sales manager for W. W.

Lanahan & Co., investment brokers, was called to the stand as a witness by the State, and testified that he, on or about the 4th day of September, 1930, had a transaction with Mr. Delcher, the defendant, in which the latter placed an order with him for two hundred shares of the General Theatre Equipment. The defendant at this point moved to strike out the answer of the witness, unless the State agreed to follow it up and prove the *corpus delicti*. This objection, as stated, was made in conjunction with the motion to quash and the exceptions to the bill of particulars. In response thereto, the court ruled that it would admit the evidence subject to the condition that the State offered evidence establishing the *corpus delicti*. "Thereupon the motion to strike out the answer of the witness was overruled and an exception noted by the defendant."

This evidence was offered in support of the charge against the traverser in indictment No. 174, which, we have said, contained four counts, in two of which (the first and the third) the defendant was charged with the larceny of money, the property of the Chesapeake Bank, and in the other two (the second and fourth) with obtaining money from the bank under false pretense.

In the bill of particulars to the second count of the indictment, it was alleged that the traverser, a vice-president of the bank, "did issue a check for $7,230.90, dated September 4, 1930, drawn on the said Chesapeake Bank, payable to the order of W. W. Lanahan & Co., and signed Milton B. Delcher, he, the said Milton B. Delcher, not having at said time a checking account with the said bank, and not having on deposit sufficient money for the payment of said check; that said check, on or about the 6th day of September, 1930, was honored and paid by the said Chesapeake Bank; * * * the said check for the said sum of $4,230.90, having been issued in payment of the purchase price of certain stock bought personally and individually by the said Milton B. Delcher, then and there well knowing that at the time of the issuance of said check, and the payment of said check, he did not have a checking account with the

said Chesapeake Bank, and that he did not have sufficient funds on deposit at the time said check was paid, to meet the payment thereof."

It is alleged in the bill of particulars to the fourth count that the defendant "did induce and cause Guy W. Meeks, who was then an employee of said bank, to issue a cashier's check in the amount of $5,831.46, drawn by the said bank on the said bank, and signed G. W. Meeks for Cashier, payable to the order of W. W. Lanahan & Co., and dated October 2, 1930, which said check was on or about October 3, 1930, honored and paid by the said Chesapeake Bank; * * * the said Milton B. Delcher, at the time of the issuance of said check pretending that the said check was issued in payment of and in connection with a regular bank transaction; whereas in truth and in fact, as he, the said Milton B. Delcher, then and there well knew, the said check was issued in payment of and in connection with the purchase of stock by the said Milton B. Delcher, personally and individually, the said Milton B. Delcher not having at the time of the payment of said check by said Chesapeake Bank, * * * deposited with or delivered to the said bank sufficient money for the payment of said check."

To meet the facts as they might be developed by the evidence when offered, the defendant, in respect to each of the two transactions, was charged with both larceny and false pretense.

In this state, the jury are both the judges of the law and the facts, and it was for them in this case to determine, upon the evidence adduced, the offense of which the traverser was guilty, or whether he was guilty of either, while the admissibility of the testimony offered was a question for the court to decide.

The witness, whose answer the defendant asked to be stricken out, had started to tell of the transaction resulting in the purchase by the traverser through W. W. Lanahan & Company, investment brokers, of the stock mentioned in the bill of particulars, when he was interrupted by the objection of the defendant. The admissibility of the evidence offered

depended upon the question whether it tended to prove facts essential to be proved, in any one of the three cases which were being tried together, including the *corpus delicti*. This evidence had such a tendency, and should have been admitted unconditionally and not subject to the conditions imposed by the court, and, when admitted, it was for the jury, and not the court, to determine whether the *corpus delicti* had been established. The jury and not the court were to determine the weight of the evidence, and they were to apply to it the law as they interpreted it, and, as a result thereof, determine the innocence or guilt of the traverser. In the event of an error or abuse in the exercise of that power by the jury, the traverser's remedy was by application to the court for a new trial. He made such application, but withdrew it before any decision was had thereon. *Rasin v. State,* 153 Md. 431, 138 A. 338; *Myers v. State,* 137 Md. 482, 113 A. 87; *Garland v. State,* 112 Md. 83, 75 A. 631.

In the course of the trial, other objections were made by the defendant to testimony of a like character offered in the two cases, Nos. 174 and 175 indictments, which was also admitted subject to the condition above mentioned. At the conclusion of the evidence in the cases, motions were made to strike out the evidence so admitted subject to exception. They, however, were overruled, and exceptions were taken thereto. These motions are very general and indefinite as to the evidence sought to be stricken out, and are, we think, objectionable for that reason. *Worthington v. Worthington,* 112 Md. 141, 76 A. 46; *Jessup v. State,* 117 Md. 119, 83 A. 140. But we need not dwell or pass upon same, because as we have already said, the evidence should have been admitted unconditionally and not subject to the conditions imposed. Consequently the court was right in refusing to strike out this evidence.

In these cases 108 exceptions were noted to the action or rulings of the court. These are not specifically discussed by the appellant, but are grouped by him under the heading of "questions in controversy," and we will discuss them in the

order presented by his brief, without undertaking to refer specifically to each of the exceptions.

The first question presented is whether the court was right in refusing to strike out the evidence of Cole and others admitted subject to the condition above mentioned. This question we have already decided.

The second question goes to the refusal of the court to permit Mr. William L. Rawls to testify that he, prior to the indictment, and before any criminal proceeding had been instituted against the defendant, had offered on behalf of the traverser to pay to the bank or the receiver the sum of $6,500 in settlement of the balance due by the accused to the bank as a result of his purchase, through W. W. Lanahan & Co., of the stock of the General Theatre Equipment Company in September and October of 1930. The appellant contends that this evidence should have been admitted because of the defense made by him that it was a loan. The fact that such offer had been made to the bank or to the receiver does not, we think, support that defense; it goes only to the extent of the offer. It may have been that the traverser had told Mr. Rawls that the amount owing was a loan, and he wished to pay it, treating it as a loan, but Mr. Rawls certainly could not have testified to what was told him by the traverser in relation to its being a loan, as this would have been mere hearsay evidence, and not admissible. And the fact that an offer was made to restore the money, if stolen, would have been no defense to the charge against the traverser. *Deibert v. State,* 150 Md. 687, 133 A. 847. We find no error in the court's ruling upon this exception.

The third question is whether the demurrer to the indictment No. 175 should have been sustained when considered in conjunction with the bill of particulars. This question, too, we have passed upon, sustaining the ruling of the court below.

The fourth question is like the first, except the fourth refers to indictment No. 175, and the first to No. 174. Our answer to that question applies with equal appropriateness to this question.

The fifth question involves the rulings of the court in not allowing directors of the bank to testify on cross-examination as to their personal and official dealings with their bank, and the bank's dealings with other banks and corporations doing business with their bank; the purpose or object of which, as stated by the defendant, was to show their bias, animus and interest in the outcome of the prosecution. There are thirty or more exceptions involved in this question, all of which we have carefully examined, and we are impressed with the fact that in most instances the evidence sought to be introduced is altogether collateral to the issue, and we fail to discover how such evidence would show bias or animus or such an interest as would in any way affect the credibility of the witness.

The sixth question is upon the rulings of the court in refusing to allow directors of the bank to be questioned by the defendant as to their knowledge, or rather their want of knowledge, of the affairs of the bank generally. It is not disclosed by an examination of the record that the court in so ruling committed any prejudicial error.

And the same may be said of the seventh question, where Frederick H. Buckholz was allowed to give in evidence the property owned by him. The traverser, as alleged, had falsely represented to the bank's directors, at the time of an application made to the bank for a loan by the Charles Decorators, Inc., in which corporation the traverser was interested, that the Buckholz connected with and interested in that corporation was the witness—the antique dealer on North Charles Street, known to be a man of substantial means; when, as a fact, he was not interested in that corporation, but the one so interested was one Bruno Buckholz, who was shown to be without means and of no financial responsibility, which fact was known to the traverser. We think it was proper in that connection to show the extent of Frederick Buckholz's means or responsibility.

The eighth question involves the ruling of the court in not allowing Schuck, the bookkeeper of the bank, to answer the question: "Will you state whether or not to your knowledge

Mr. Delcher, the defendant here, had occasion to discharge him (Daily) for drunkenness last year, and, if so, state the circumstances"; and in not allowing Dashiell, the night teller, to answer the question: "Do you know whether or not he (Daily) was discharged by Mr. Delcher for drunkenness last year?" It is claimed by the defendant that, inasmuch as Daily had testified as to facts damaging to the traverser, it was proper to show bias affecting his credibility. Daily, on cross-examination, had testified that "Mr. Delcher said I was drunk, and I said I was sick. Mr. Delcher said, Get out, we are done with you." This was followed on redirect examination by Daily, saying: "I had this misunderstanding with Mr. Delcher in February, 1929. I continued on from that time until the bank closed. Mr. Delcher during that time was my superior officer, and I was in daily contact with him. I never lost any time from that time until the bank closed." The evidence sought to be elicited by these questions was that Daily had been discharged by the traverser. If the witnesses had been permitted to testify, they would have done no more than corroborate Daily's admission. Consequently, we discover no prejudicial error in these rulings.

In the ninth question are embraced seventeen exceptions, 10 to 26, inclusive, to questions asked Guy W. Meeks, paying teller of the bank, as to the custom of the bank in purchasing stock for customers or officials when they had no funds available in the bank. This evidence sought to exculpate him from any wrongdoing in purchasing stock and having same paid for in the manner he did, and to establish the transaction as a loan to the defendant from the bank. As stated by the trial court: "If the act in respect to the present defendant was a criminal act, its criminality would be in no degree affected by the perpetration of similar crimes in respect of a similar transaction" for others. In addition to the reason stated, it may also be said that the questions asked were as to the custom of the bank in such cases, assuming or implying thereby that the acts with which the traverser was charged were the action of the bank, when the evidence tends to show that these were the acts of the traverser, for

which he alone was responsible. We find no error in the rulings of the court upon these exceptions.

The tenth and last question arises from a motion to strike out the verdict, judgment and sentence in each of the cases, 174 and 175, which was overruled by the court. The ground of the motion was that the trial court permitted and allowed the state's attorney, during his closing argument, to hand over to the foreman of the jury a piece of paper upon which was typewritten the following:

"174 Lanahan Transaction
First and third count—Larceny

"173 Young's System
First count—False Pretense
Fourth, sixth, eighth, tenth, twelfth count—Larceny

"175 Charles Decorators
First, third, fifth, seventh, ninth, eleventh counts—False Pretense."

The record contains the following stipulation in respect to this paper:

"It is stipulated and agreed that the above paper was not offered to the traverser's counsel for their inspection, nor was it offered to the court for inspection. No objection was made by traverser's counsel to the action of the state's attorney in handing this paper to the jury, which was done openly in their presence. The state's attorney held said paper in his hand during his closing argument to the jury and commented thereon, but did not read same to the jury. No objection was at any time made by the defendant, or the defendant's counsel, to the action of the state's attorney in handing said paper to the jury or to the paper itself, nor did the defendant or the defendant's counsel, at any time, take an exception to said action or to the said paper."

It is further disclosed by the record, which contains a photostatic copy of this paper, that the jury in rendering their verdict read from this paper upon which they had marked or indicated their conclusions by placing after the

counts of the indictment therein contained the letter G where their verdict was guilty, and N. G. where their verdict was not guilty. It was after their verdict had been taken and enrolled that the court's attention was called by counsel for the appellant to the delivery of this paper by the state's attorney to the foreman of the jury, and the court then said: "It was done in open court, and I particularly observed at the time that it seemed to be done with the knowledge of counsel for the defense, who made no point of it at that time." The counsel for the appellant then said: "Now, if your Honor pleases, we may want to file a formal motion on that matter and we would ask that the paper which the foreman has be made a part of the record." This was done upon the direction of the court.

The verdict was rendered on the 24th day of March, 1931, though the motion to strike out the verdict, judgment and sentence was not made until April 30th, 1931.

In *Cahill v. Baltimore,* 129 Md. 27, 98 A. 235, 238, where the jury, at the request and dictation of the counsel for the appellant, had taken a written memorandum of the amounts testified to by the witnesses in the case as to the damages and benefits in connection with the widening and opening of the Key Highway, the court said:

"We see no objection in a juror taking notes in a case complicated with figures, during the examination of testimony, and being permitted to take these to the jury room, for the purpose of refreshing his recollection, provided the trial court is satisfied that such action will not delay the trial, or interfere with the juror following the evidence. But making such notes from the dictation of counsel is an entirely different matter, and about which the court should be extremely cautious in permitting it to be done, in the absence of consent of counsel.

"We have found only one state where in the absence of statute such practice is allowed as a matter of right. In all the other states where the question has arisen it has been held, as we have stated, not a right, but a discretionary power, of the trial court, with the exception of Indiana, where it is

492

held to be a reversible error to permit it. We think, however, from reason that the better rule is with the weight of authority and so hold."

In this case the paper writing, which was handed to the jury by the state's attorney, and which was carried by them to their room, was no part of the evidence, but merely a written memorandum containing only the counts in the three indictments upon which the state's attorney, in his closing argument, had asked for conviction. And this, he said, was fully explained to the jury in the presence of the court and the counsel for the appellant. As to the other counts he had told them he did not ask for a conviction. The counsel for the appellant, though present and hearing the explanation made by the state's attorney, made no objection to the paper being handed to the foreman of the jury until after the verdict was rendered and enrolled. The jury in their verdict did not do as they were asked by the state's attorney as to all the counts of the indictment. In No. 173 indictment, where he asked for a conviction in both the larceny and false pretense counts, the verdict was not guilty as to all of them. This fact is alluded to as showing that the jury were not influenced or misled by this paper handed to them.

Without expressing our approval of the practice in so doing, it would seem that it was within the discretionary power of the trial court to permit the paper to be handed to the jury, as above stated; and, had objection been seasonably made, an opportunity would have been afforded the court to pass upon the same, and, had it sustained the objection, the alleged wrong would have been averted. But, the objection being delayed as it was, no such opportunity was afforded the court. *Luray v. State,* 157 Md. 635, 147 A. 599.

As we find no prejudicial errors in any of the rulings of the court, the judgment appealed from will be affirmed, with costs.

*Judgment appealed from affirmed, with costs.*