# SAUL MARGULIES *v.* STATE OF MARYLAND.

*Criminal Law—Plea as to Place of Crime—Indictment for
Murder—Conviction of Manslaughter—Polling Jury—
Striking Out Verdict and Judgment—Appeal
from Refusal—Discretionary Ruling.*

A plea that the felony charged, if committed at all, was committed elsewhere than in the county in which the indictment alleged it to have been committed, and that therefore the court was without jurisdiction, was demurrable as amounting to a plea of "not guilty," it being, not a plea to the jurisdiction, but merely a traverse of one of the material averments of the indictment.                                             pp. 206-208

A verdict finding the prisoner guilty of manslaughter, on an indictment confined to a charge of murder, should expressly acquit on the murder charge.                              p. 209

Where the verdict as reported by the foreman complied with the above rule, it is immaterial that each of the other jurors, when polled and asked whether the verdict, as reported by the foreman, was his verdict, merely nodded his head and said "guilty of manslaughter," without negativing the charge of murder.                                             p. 209

Where the docket contained an entry, directed by the court, that "motion to strike out verdict, judgment, and sentence dismissed, the allegations and reasons for same having been fully heard and determined in the motion for a new trial," the trial court was entitled to the presumption that, when it fully heard the reasons on the motion for a new trial, it made such investigation as was necessary to determine whether there was any basis of fact for the allegations.                              p. 211

Where a motion to strike out a verdict and judgment was based upon the same grounds, not apparent on the face of the record, which a motion for a new trial had presented, and had been found to be unsustainable after a full hearing on that motion, the action of the trial court in dismissing the second

motion should not be disturbed unless the discretion of the court
was abused.                                                    **p. 212**

*Decided June 8th, 1927.*

Appeal from the Circuit Court for Howard County (FOR-
SYTHE and MOSS, JJ.).

Criminal proceeding against Saul Margulies. From a
judgment of conviction, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON,
URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Harry W. Nice* and *Richard E. Preece,* with whom was
*Max Sokol* on the brief, for the appellant.

*John Hubner Rice, Assistant Attorney General,* with
whom were *Thomas H. Robinson, Attorney General, A. T.
Brady, State's Attorney for Anne Arundel County,* and *R.
D. Rogers, State's Attorney for Howard County,* on the
brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The indictment in this case alleges, in its first count, that
the appellant concocted in the City of Baltimore certain
pernicious and deadly liquor, intended to be used and drunk
by human beings for beverage purposes, and unlawfully sold
the liquor knowing that it was pernicious and deadly and
was to be used for beverage purposes, and that a quantity
of the liquor was brought to Anne Arundel County and was
drunk by Nelson Owens for a beverage, from the effects of
which he was poisoned and died, and that on or about the
9th day of January, 1926, in Anne Arundel County, the
appellant, with the aid of three other named persons, wil-
fully, feloniously, and of his malice aforethought, unlaw-
fully gave, sold, administered, supplied, and furnished to
Nelson Owens a large quantity of a certain pernicious and

deadly poison, commonly known as wood alcohol, with intent that he should drink it as a beverage, and that he in fact drank the liquor so furnished to him by the appellant, in consequence whereof he died in Anne Arundel County on the 11th day of January, 1926, and so the indictment charged that the appellant and the other persons named, in the manner and by the means described, feloniously, wilfully, and of their malice aforethought, did kill and murder, contrary to the form of the act of assembly in such case made and provided and against the peace, government and dignity of the State.

A second count of the indictment charged, in the general statutory form, that the appellant, and the designated abettors, feloniously, wilfully, and of deliberately premeditated malice aforethought, did kill and murder Nelson Owens on the 9th day of January, 1926, in Anne Arundel County.

The appellant filed a plea alleging that the felony and murder charged in the indictment was committed, if at all, within the limits of the City of Baltimore and not elsewhere, and that the Circuit Court for Anne Arundel County was therefore without jurisdiction to take cognizance of the indictment. A demurrer by the State to the plea as to jurisdiction was sustained. On the appellant's application the case as to him was thereafter removed to the Circuit Court for Howard County for trial. In that court a demurrer by the appellant to each count of the indictment was sustained as to the first count and overruled as to the second. A plea of not guilty was then filed, and the case proceeded to a jury trial, which resulted in the appellant's conviction of manslaughter. After a motion for a new trial had been overruled, and sentence imposed, the appellant filed another motion on the same grounds, which will be stated presently, to strike out the verdict, judgment, and sentence. The adverse rulings of the court upon that motion and on the demurrer to the special plea are the subjects presented for consideration on this appeal.

While the first count of the indictment stated that the

poisonous liquor which caused the death of Owens was concocted by the appellant in Baltimore, it also alleged that the appellant furnished it to the victim in Anne Arundel County, and both counts charge that he committed the homicide in that jurisdiction. In order to secure a conviction it was necessary for the State to prove that allegation. It was competent for the appellant to offer evidence to the contrary under a general issue plea. This Court has held, in *Leister v. State*, 136 Md. 518, that a plea denying that the charged offense was committed in the county named in the indictment is demurrable as amounting to a plea of "not guilty." In the opinion delivered by Judge Offutt in that case it was said:

"The indictment in the case charged in the usual form that the appellant had begotten at Carroll County an illegitimate male child, which was afterwards born alive. To this indictment the appellant interposed what is described in the record as a 'plea to the jurisdiction,' in which he stated that the fornication referred to in the indictment did not take place in Carroll County. This pleading was not a plea to the jurisdiction, as that term is usually understood, but was a mere traverse of one of the material averments of the indictment, and possessed none of the *indicia* or elements of a technical plea to the jurisdiction, as that plea is known to the law of this State. A technical plea to the jurisdiction is something more than a mere allegation that the traverser is not guilty of the crime charged in the indictment, and that is all the 'plea to the jurisdiction' in this case amounts to. Unless the State proved that the fornication referred to in the indictment occurred at Carroll County, the traverser would be acquitted, if it did prove it, he would be convicted, and whether the State did or did not prove it could only be determined by a jury or the court sitting as a jury. A plea, therefore, that the fornication did not occur at Carroll County, was in effect equivalent to the general issue plea of 'not guilty,' and therefore bad in law. A technical plea to the jurisdiction must allege facts from

which it may be inferred that the court has no jurisdiction over the subject matter, or over the person of some party to the proceeding, as for instance, that the alleged offense was not an offense against the laws of the state of the forum, but against a federal or foreign statute or law, or that some party to the proceeding was for some reason not subject to prosecution in the particular forum.

"It cannot be questioned that the Circuit Court for Carroll County had jurisdiction over the subject-matter of the proceeding, that is of the particular offense charged in the indictment, and it is not suggested that the appellant enjoyed any special privileges or status which prevented his prosecuiton in that court. The demurrer to this plea should therefore have been sustained. *Bishop's New Crim. Proc.*, sec. 736; *Trem. P. C.* 271; *Hochheimer, Crim. Law*, par. 119; *State v. Mitchell,* 83 N. C. 674."

The principle of that decision applies with controlling force to the special plea filed in the present case, and justifies the action of the trial court in holding it to be demurrable.

One of the reasons assigned in the motion to strike out the verdict, judgment, and sentence, was that, when the members of the jury were polled, on the prisoner's demand, after the foreman had reported the verdict as "Not guilty of murder, but guilty of manslaughter," each of the other jurors being asked: "You have heard the verdict of your foreman. Is that your verdict?" responded "Guilty of Manslaughter," without negativing the charge of murder. The docket entry on this point is: "Jury polled and each gave verdict of not guilty of murder, but guilty of manslaughter." But it was proposed to prove, in support of the motion, that the words, "not guilty of murder," were not used by any of the jurors, except the foreman, when they were polled. According to the proffer each of the other jurors, when asked whether the foreman's verdict was also his own verdict, nodded his head and said, "Guilty of manslaughter," and that when the clerk said "Hearken to the verdict as the court hath recorded it. Your foreman says that the defendant, Saul

Margulies, 'is not guilty of murder, guilty of manslaughter,' and so say you all," some of the members of the jury nodded their heads, and some said "It is."

Under the rule stated in *State v. Flannigan,* 6 Md. 167, it was necessary that the verdict finding the prisoner guilty of manslaughter, on an indictment confined to a charge of murder, should expressly acquit on the murder charge.   The verdict as reported by the foreman precisely complied with that rule.   It was the purpose of the poll demanded by the prisoner to ascertain from each juror whether his individual conclusion was correctly expressed by the verdict which the foreman had rendered.   To accomplish that purpose the clerk proceeded in accordance with the customary and approved practice.   *Duffy v. State,* 151 Md. 456.   In response to the clerk's inquiry, each juror indicated his agreement with the foreman in the rendition of the verdict.   It would have been sufficient to answer "Yes" or "It is" to the question whether the verdict of the foreman was the verdict of the juror interrogated.   *Biscoe v. State,* 68 Md. 294.   But the affirmative nod of the head and the use of the words "Guilty of manslaughter," were clearly intended to mean that the responding jurors were in agreement with their foreman upon the verdict announced.   It was so evidently the purpose of every juror to acquit the prisoner of murder and convict him of manslaughter that the trial court was fully justified in declining to strike out the verdict on the theory that it was not properly expressed.

In *Ford v. State,* 12 Md. 514, and *Williams v. State,* 60 Md. 402, the verdicts rendered on the poll were held to be defective because the individual jurors, other than the foreman, in reply to the clerk's inquiry, merely said "Guilty," without specifying, as required by the statute, the degree of the murder of which the prisoner was intended to be convicted.   The degree of the crime in this case was definitely indicated by the verdict of manslaughter reported by the individual jurors, and the assent of each to the verdict, deliv-

ered by the foreman, acquitting the prisoner of murder, was plainly manifested.

The motion to strike out the verdict, judgment, and sentence included allegations that remarks injurious to the defendant were made in the presence of the jury, outside of the court room, and that one of the jurors, before the panel was complete, made a statement in a lunchroom evidencing a predisposition against the defense. These allegations refer to affidavits of Charles T. Gladstone and the defendant, previously filed in support of the motion for a new trial. The affidavit of Gladstone was to the effect that, on the second day of the trial, and during the noon recess, he was accosted in the presence of the jury by one of the State's witnesses, who verbally abused him in a loud voice, and threatened to have him thrown into jail if he testified for the defendant, and that the derogatory remarks thus made to the witness were false, and tended to prejudice the defendant in the minds of the jury. The defendant's affidavit stated that on the first day of the trial he was taken to a lunchroom by the sheriff, and was accompanied by Arcangelo Tumselli, who was to be a witness in his behalf, that nine of the jurors who were afterwards sworn in the case, a full panel not having been secured at that time, were sitting at a table opposite the one at which the defendant and his witness were seated, that when the lunch was about finished Tumselli said, "I do not think you will need me, Mr. Margulies. Everything looks all right and I am going back to town," to which the defendant assented, saying he was innocent and expected to leave court a free man, and that, apparently in response to that statement, one of the jurors at the other table said, "Like hell you will." The affiant further stated that he did not know, until this juror was polled at the end of the trial, that he was the same man who made the remark in the lunchroom, otherwise the defendant would have informed his counsel and asked to have the juror challenged.

Exceptions were taken to the action of the court in dismissing the motion to strike out the verdict, judgment, and

sentence, and to its refusal of the defendant's proffer to prove the statements therein contained. By direction of the court, the following entry was made on the docket: "Motion to strike out verdict, judgment and sentence dismissed, the allegations and reasons for same having been fully heard and determined in the motion for a new trial."

The trial court is entitled to the benefit of the presumption that, when it "fully heard," on the motion for a new trial, the same reasons which were urged in support of the subsequent motion to strike out the verdict and judgment, it made such investigation as may have been necessary to determine whether or not there was any basis of fact for the allegations which the affidavits referred to were intended to support. The defendant was entitled to be tried by twelve impartial jurors, exercising their judgment with perfect freedom from improper influences, and it should be assumed that the trial court did not disregard this fundamental right. It would be a gross impropriety to discredit a prisoner's witness in the presence of the jury out of court, and it would be seriously prejudicial to his case to have the jury include a member who was actually hostile to the defense, when accepted as a qualified juror upon the belief that he was wholly impartial. It was the duty of the trial court to determine whether the alleged violations of the defendant's rights, in these important respects, had been committed. The record permits and requires us to infer that the court performed this duty and found that the allegations in question were without merit in fact.

In *Miller v. State,* 135 Md. 382, where the improper remark of a detective to one of the jurors was the ground of the motion to strike out the verdict and sentence, it was said in the opinion delivered by Judge Adkins for the Court:

"It is difficult to see in any case which has been fully tried on its merits the difference between a motion to strike out a judgment and a motion for a new trial, except from the refusal to grant the former an appeal may be entertained, and not, in this state, from such refusal as to the latter.

"The reason for the rule in this jurisdiction denying ap-

peals from orders refusing motions for new trials applies equally in cases of motions to strike out judgments after full trial. In the one case as much as in the other the trial court is in a much better position to determine fairly the merit or want of merit in such applications than an appellate court, in the nature of things, can be; and therefore the finding of the trial court on such a motion should not be set aside, unless the appellate court cannot escape the conviction, not only that the verdict may have been influenced by the matters complained of, but that it probably was so influenced.

"The conduct of the detective in the case at bar was most reprehensible and deserved the sternest rebuke; but, tested by the rule which should govern in motions of this character, this is not a case where our judgment should be substituted for that of the trial court, even if, in its situation, we might have reached a different conclusion."

In the present case the same principle applies. As the motion to strike out the verdict and judgment was based upon the identical grounds, not apparent on the face of the record, which the motion for a new trial had presented, and which had been found to be unsustainable after a full hearing on that motion, the action of the trial court on the second motion should not be disturbed unless the discretion of the court was abused, and the record in the case does not warrant a decision to that effect. The rule, applied in *Wash., B. & A. R. Co. v. Kimmey,* 141 Md. 243, cited by the appellant, that the propriety of the exclusion of the depositions offered in support of a motion for a new trial may be considered on appeal, is not available in this case, because it appears from the record that, when the motion for a new trial was heard, the affidavits relied upon were given full consideration by the trial court.

*Judgment affirmed, with costs.*