## ROBERT WOODROW WILSON *v.* STATE
## OF MARYLAND

[No. 269, September Term, 1967.]

194

*Decided May 21, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Martin H. Freeman* for appellant.

*Henry J. Frankel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Benjamin R. Wolman, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellant was found not guilty of murder but guilty of manslaughter·under an indictment charging him with murder by

a jury in the Circuit Court for Prince George's County. He was sentenced to imprisonment for a term of four years.

The questions presented on appeal from the judgment are herein considered in the order in which they were argued before this Court.

I

*"Was the defendant denied a fair and impartial trial when the trial judge in his admonition to the jury affirmatively advised that throughout the trial they could talk about the case as long as they were alone among themselves or in the jury room?"*

Trial commenced on 21 July 1967, resumed on 24 July and 25 July and concluded on 26 July. The jury separated during each trial day for lunch and at the end of each day of trial. The trial judge admonished the jury immediately before each separation, seven times in all. After the first admonition, given before the luncheon recess of court on the first day of trial, the record shows the following colloquy between the court and counsel for the appellant, out of the presence of the jury:

> "MR. FREEMAN: * * * I detected in the instruction to the jury about discussing the case that they should not discuss it among themselevs anywhere except in the jury room. I would request, if the Court please, an instruction that until the case is terminated that they should not even discuss it there.
>
> THE COURT: Well, they have a right to discuss it. They don't have a right to take it up on the basis of determining the case itself, but they certainly have got a right—You have got to be practical about it. They are going to discuss it during a recess. But the thing that you are aiming at and we always instruct them not to take the case up, not to take a vote and not to make any final determination. This is true of any case. But to tell them that they can't talk about it in there is not realistic. They are going to. You are not going to stop it. But the only purpose in telling them that, the intention of telling them that, is not to make any conclusion on the case, not to take any vote and not

make up their minds. But you can't deny them the right of discussing the case.

MR. FREEMAN: Well, I have made my request and I suppose it has been denied.

THE COURT: Well, we are telling you what we do and what the usual meaning of it is, which I don't think you are familiar with, and that is why we are doing it, to enlighten you.

MR. FREEMAN: Thank you."

We think it a fair construction of the admonitions given by the trial judge that the admonitions conveyed to the jurors that they could discuss the case among themselves before its final submission to them when they were together in the jury room as the appellant's counsel alleged. The appellant does not claim that the cautions given by the trial judge with regard to the conduct of the jurors while separated were insufficient or improper.[1] But he urges that before the case is finally submitted to the jury, they may not properly discuss it among themselves whether or not they are separated and therefore, the trial judge committed prejudicial error. There is no statute or rule in this jurisdiction requiring the trial judge to admonish the jury that they are not to discuss the case in the jury room before its final submission to them.[2] Nor are we aware of a case which compels us to

---

1. The trial court may, in its discretion, permit jurors sworn to try a criminal action to separate at any time before the submission of the case to the jury. Md. Code (1968 Repl. Vol.), Art. 51, § 29; *Graef v. State*, 1 Md. App. 161. The appellant does not challenge the exercise of the discretion of the trial court in permitting the jury to separate. For a discussion of the separation of the jury before the submission of the case see *Midgett v. State*, 223 Md. 282. For a discussion of the separation of the jury after submission see *Kennard v. State*, 177 Md. 549.

2. Code, Art. 51, § 29 does not require an admonition even upon separation of the jury. In a number of other states, upon adjournment, admonitions by the court to the jury are required by statute. The content of the admonition as provided by the various statutes is substantially the same—it is the duty of the jury not to converse among themselves or with anyone else on any subject connected with the trial, or to form or express any opinion thereon until the cause is finally submitted to them. But the statutes are not uniform

so hold. "It is, however, our established practice that an admonition be given by the trial court to members of the jury, *prior to separation,* against discussing the case with others or among themselves." (emphasis added). *Midgett v. State,* 223 Md. 282, 293. The Court said in *Midgett,* at page 295, that the main objectives sought by the usual admonitions were "to avoid any outside influences and to cause the jury's final verdict to be based solely on the evidence and on the whole of the evidence presented in the court." But we do not construe *Midgett* to hold that the jurors may not discuss the case before its final submission to them when they are not separated. There the contention

---

as to whether the admonitions must be given on any adjournment or only when the jury is separated. In California (Cal. Penal Code, § 1122), Oklahoma (Okla. St. [1961], § 854), and Nevada (Nev. Rev. St. [1963], § 175.325), for example, the jury must be admonished "whether permitted to separate or kept in charge of officers." In Kansas (Kan. St. Ann. [1964], § 62-1446: See *State v. Bussey,* 58 K. 679, 688, 50 P. 891), Missouri (Mo. Rev. St. [1959], § 546.230), Ohio (Page's Ohio Gen. Code [1937], § 13443-17) [the caution here as to conversation is not to converse with "any person" without designating "among yourselves"], Kentucky (Ky. Rev. St. [1962], § 29.302) [the caution here as to conversation is not to converse with "any other person" without designating "among yourselves"] and Nebraska (Rev. St. of Neb. [1943, reissued 1964] § 29-2022) the admonition must be given only on separation of the jury.

We are not aware of a statute requiring that the jury be admonished on adjournment in federal trials. However, *Mathes and Devitt, Federal Jury Practice and Instructions* (1965) ch. 3, § 3.02, p. 23, states:

"The jury should be admonished not to converse or communicate among themselves or with others upon any subject touching the merits of the case and not to form or express any opinion on the case until it has been finally submitted to them."

*United States v. Viale,* 312 F. 2d 595, 602 (2d Cir.), cert. den. 373 U. S. 903 is cited as authority for the statement. But in *Viale* the court said, p. 602:

"It has never been the law of this circuit that the trial judge must admonish the jurors not to discuss the case among themselves, although it has been the practice of most of the judges to suggest that it is advisable to refrain from such discussion until the case is concluded."

was that the conviction should be reversed because upon several adjournments during the course of the trial when the jury was allowed to separate, the court did not caution the jurors against discussing the case. The opinion must be considered within the frame of reference of the contention and we do not feel that it is applicable to a jury not separated. The usual caution against the jurors discussing the case among themselves applies when the jury is separated and we are not persuaded otherwise because the Court, in *Midgett,* in finding that there had been substantial compliance with the rule as to admonitions, noted that the trial court had cautioned the jury not to discuss the case "with anyone during recess, nor amongst yourselves" and had elaborated on the latter point, stating that it was "because you are supposed to discuss this case only when it is completed and it is turned over to you when you retire to the jury room for a verdict." at page 294. The appellant relies on *Winebrenner v. United States,* 147 F. 2d 322 (8th cir.) in which the jury was admonished not to discuss the case "to such an extent that you form definite fixed ideas that would prevent you from changing after you heard all the evidence in the case." page 327. The court felt that this caution warranted the jury to discuss the case among themselves before final submission of it to them. It believed that this was harmful because the jury had not heard all the evidence, they had not received the court's instructions "as to how the evidence was to be considered by them," they had not heard argument of counsel and they were enabled "to divide themselves into separate groups and distinct deliberative bodies." It found that the right to a fair trial and due process of law were violated and reversed the judgment, remanding the case for a new trial. We do not agree that it necessarily follows that an accused is denied a fair trial and due process of law because of the absence of an admonition not to discuss the case before its final submision to them or because they are told, in effect, that they may so discuss it. Of course, it is the constitutional right of a defendant in a criminal case to be tried by an impartial jury. Amendment VI to the Constitution of the United States, Article 21 of the Declaration of Rights of Maryland, *Jones v. State,* 2 Md. App. 429. "In our present state of society, all that can be required of a juror, to render him

competent, is that he shall be without bias or prejudice for or against the accused, and that his mind is free to hear and impartially consider the evidence, and to render a verdict thereon without regard to any former opinion or impression existing in his mind, formed upon rumor or newspaper reports." *Garlitz v. State,* 71 Md. 293, 300 quoted in *Baltimore Radio Show, Inc. v. State,* 193 Md. 300, 328. A defendant is entitled to be tried by a jury composed of competent jurors, "exercising their judgment with perfect freedom from improper influences." *Marguiles v. State,* 153 Md. 204, 211.[3] We think that the jurors properly may be regarded, in the absence of a showing to the contrary, as performing their duties as they have sworn to perform them.[4] The trial court made it clear in its admonitions that while the jurors were separated they were not to discuss the case "* * * among yourselves or with anyone else * * * or to read any newspapers or listen to any broadcasts or look at any television or anything concerning this particular case * * * The point is we just don't want any outside interference[5] * * * [Y]ou are to divorce yourself from any of this because there is always a possibility that it may contain something which is not in the evidence, or it may contain somebody else's thoughts or reactions to what was presented. And you are entitled to all of the evidence, but no one of you is entitled to have anything that the others don't have the benefit of * * *."[6] In the instant

---

3. The purpose of *voir dire* examination is to ascertain the existence of cause for disqualification. *Borman v. State,* 1 Md. App. 276, 279.

4. A usual form of the oath administered to the jurors by a clerk of the court is substantially as follows:

"Members of the Jury, you and each of you do solemnly promise and declare that you will well and truly try the issues joined between the State of Maryland, and ————, defendant, and a true verdict give according to the evidence."

5. Contained in the admonition before luncheon recess on 21 July.

6. Contained in the admonition at the end of the trial day on 21 July. The jury was cautioned not to discuss the case among themselves or with anyone else while separated at each subsequent adjournment of court. The advisory instructions of the trial judge to the jury at the conclusion of all the evidence included that the jury

case there is no hint or suggestion that the verdict of the jury was not based solely on the evidence and the whole of the evidence or that the jurors committed their minds until all the evidence was presented to them and we see no reason for us to assume to the contrary. There was no showing that the appellant was prejudiced and we feel that the refusal of the trial judge to admonish the jury not to discuss the case among themselves in the jury room or even the possibility that they did discuss it does not present a matter of constitutional dimension. We find no denial of the appellant's constitutional right to a fair trial and are not persuaded by *Winebrenner* that the right to due process of law is properly extended to embrace the matter. We deem a proper due process of law standard for a criminal trial to be one tried in accordance with the Bill of Rights and laws passed pursuant to constitutional power, guaranteeing to all alike a trial under the general law of the land. We think that the trial of the appellant complied with this standard.

It may be the better practice, in order to preclude any possibility of misconduct (insofar as admonition can do so) that every jury be admonished not to discuss the case among themselves, even when in the jury room, until it is finally submitted to them.[7] But having found that it is not required, constitution-

---

was to determine for themselves the weight of the evidence and the credit to be given the testimony of the various witnesses, that the appellant must be proved guilty beyond a reasonable doubt on evidence which "must be presented in court" and that in considering the verdict the jury "must look for an answer only to the evidence received in this trial."

7. This does not appear to be the general practice in Maryland, although, as noted, it is the established practice to admonish the jury upon separation not to discuss the case among themselves. We understand that a Handbook for Jurors is given to jurors serving in the Courts of Baltimore City. It includes the following: "Jurors must not discuss the case with others or read about it in the newspapers or listen to broadcasts about it until after the trial is ended and the verdict returned. Their decision must be controlled by the evidence in the case and by nothing else. If an outsider tries to talk with a juror about a case on which he is sitting and while it is pending, the juror should refuse to listen. He should tell that person it is improper for him to discuss the case or receive any information except in the courtroom * * * Jurors should be careful while the

ally or by statute, rule or decision, we cannot find prejudicial error in the trial judge's admonitions under the facts and circumstances of the instant case.

## II

*"Did the trial court abuse its discretion in refusing to grant a request for a bill of particulars setting forth the facts which the State contended showed premeditation or malice on the part of the defendant or which showed the acts which the defendant allegedly committed?"*

Prior to trial the appellant filed a motion for a bill of particulars which included a request for all facts which the State contended showed premeditation, malice and "the specific act or acts which the defendant is alleged to have performed which resulted in the death of the decedent." In its answer to the motion the State asserted that the appellant had been furnished with particulars through oral disclosure and extended discussion between his counsel and the Assistant State's Attorney and the answer contained a summary of the events related to the charge, additional to that given orally. Other than to the extent disclosed, the State excepted to the demand for facts showing premeditation, malice and the specific acts performed by the appellant. At a hearing on the motion the trial court refused to require the State to furnish more particulars.[8] The appellant concedes that, as he was convicted of manslaughter, the denial of the request with regard to facts showing premeditation and malice is moot. He urges, however, that the denial with regard to facts of specific acts alleged to have been performed by him, specifically as shown by the testimony of Alvin Phillip Luckel, whom he designates as a key witness for the State, was error. He complains that the testimony of the witness at the trial as to the specific acts included "continual kicking (by the appellant of the deceased), despite pleas to stop, which quite differ

case is on trial not to communicate on any subject with any lawyer or witness in the case." This is in accordance with the main objectives of the usual admonitions given prior to separation.

**8.** The appellant also filed a motion for discovery and inspection which was answered by the State. Although the sufficiency of the compliance with the motion was argued at a hearing thereon, this question is not presented on appeal.

from what he testified to at the preliminary hearing." He asserts that he was therefore "surprised upon receipt of that evidence at the trial." The testimony of Luckel at the trial, to which the appellant refers, was that Luckel said that he noticed the appellant kicking the deceased and when Luckel told him, "For God's sake, quit kicking the guy," the appellant did not reply. "He just kept kicking him." There was no objection to this testimony. We do not have the transcript of the proceedings at the preliminary hearing before us but at the hearing on the motions filed by the appellant, his counsel quoted Luckel as saying at the preliminary hearing that "* * * it appeared to me that he (the appellant) was kicking him (the deceased)." In his argument at the hearing on the motions counsel characterized this testimony as Luckel saying he saw the appellant "* * * kicking away at the guard (the deceased)." Further, in the answer to the motion for particulars, the State set forth that Luckel was struck "one time" by the deceased, "next remembering the Defendant striking and kicking the deceased."

Maryland Rules of Procedure, 715 a provides that the court may order the filing of a bill of particulars. But a defendant is not entitled thereto as of right. The grant or refusal of particulars is within the sound discretion of the trial court and this Court will not reverse a denial of particulars unless there has been a gross abuse of discretion resulting in injury to the accused. *Pearlman v. State*, 232 Md. 251, 261. Bills of particulars are intended to guard against the taking of an accused by surprise by limiting the scope of the proof. *Hadder v. State*, 238 Md. 341, 351. We do not think that the appellant can validly claim surprise as to the point of which he complains on appeal and find no gross abuse of the discretion by the trial court resulting in injury to the accused. We note also that the defense is not prohibited from interviewing the State's witnesses prior to trial.

### III

"*Did the court below err when it refused to permit the appellant to express his state of mind, his intent, at the time that he allegedly committed the acts comprising a specific intent crime?*"

The appellant was charged with the murder of a security

guard whose duties included a check of the premises of an apartment complex. The appellant and Luckel had been in one of the apartments and when they left they went to Luckel's car which had been left on the apartment parking lot. The appellant got in the car. The deceased drove up and accosted Luckel. The appellant testified that he heard Luckel holler, "Bob, Bob come here quick." The appellant heard "scuffling," got out of the car and saw Luckel standing by the fender of a car and the guard "had his hands poised as if he were going to strike." Defense counsel asked the appellant, "Now, what was your intent when you approached the scene there." Objection to the question was sustained. The appellant then testified that he approached the guard, that the guard kicked him and came toward him and the appellant "started swinging." He was asked by defense counsel "* * * the reasons why you started swinging" and he replied, "I was afraid that this nut was going to kick my brains out. That's just my feelings at that time." Later during his testimony the appellant said that he went to the office of his counsel and made a statement "as to how he was involved in this crime." At this time he did not know that a warrant had been issued for his arrest or that the police were looking for him. He then went with his counsel "to report in to the authorities." The appellant was asked by his counsel whether he had any intention of "not reporting" in to the authorities. The State objected, the appellant answered "No" and then the court said, "Sustained." There was no motion to strike the answer. Defense counsel then asked the appellant what his "intentions were with respect to reporting in to the authorities" and objection to the question was sustained. The appellant contends that these rulings of the court were reversible error.

An accused is competent to testify as to his intent or state of mind. *Davis v. State,* 204 Md. 44, 52; *Webb v. State,* 201 Md. 158, 162; *Wharton's Criminal Evidence,* 12th Ed., Vol. 1, § 164, p. 318. No other person can testify positively with regard to a particular intent entertained by an accused but an accused could, if truthfully inclined, swear positively to that intent; if his testimony as to that fact is material and pertinent to the issue, his testimony ought not to be excluded. *Fenwick v. State,* 63 Md. 239, 241. In the instant case the appellant was charged

with murder and raised the issue of self defense. His intent at the time of the assault would thus be material as to the existence of malice, *Davis v. State, supra,* p. 52, and as to justification for the homicide. But although his testimony as to his intent when he "approached the scene" was excluded, his testimony as to his intent at the time the assault was committed was admitted. Whatever his intent was when he approached the scene, his intent and state of mind when he assaulted the deceased were clearly before the jury—"I was afraid that this nut was going to kick my brains out. That's just my feelings at that time." We therefore find no prejudice to him in the exclusion of his testimony as to his intent when he approached the scene and hold that the trial court did not commit reversible error in sustaining the objection to the question soliciting it.

There is no merit in the appellant's contention that he was not permitted to testify as to his intention to report the incident to the authorities. His answer that he had no intention of not reporting it was before the jury despite the ruling of the court, and, in any event, the matter of his intent in this regard was not material and relevant to the issue of his guilt or innocence of the crime charged. Further, he suffered no prejudice by the ruling of the court, for what he in fact did with respect to reporting "in to the authorities" was presented to the jury by him.

IV

*"Where the trial judge instructed the jury as to second degree murder, manslaughter, and justifiable homicide, was the appellant also entitled to an instruction covering a finding of not guilty based upon the death being caused by another, where there was evidence of the death being caused by another?"*

After the charge to the jury defense counsel said, out of the presence of the jury:

"It occurred to me while the instructions were being given that the only advisory instructions on not guilty dealt with justifiable homicide. I believe that the defendant is entitled to an instruction simply that if the jury finds, or if the jury is not convinced beyond a reasonable doubt that the defendant was the one that caused the death, then they should find him not guilty

because there is evidence in the case that someone else may have done it."

At the close of all the evidence the lower court granted a motion for judgment of acquittal as to murder in the first degree. In its instructions the court made clear to the jury that the possible verdicts were guilty of murder in the second degree; not guilty of murder, guilty of manslaughter; not guilty. It thoroughly explained the presumption of innocence; the burden of the State to prove the appellant guilty beyond a reasonable doubt and to a moral certainty; that the appellant was entitled to every inference in his favor which could be drawn from the evidence; that where two inferences could be drawn from the same set of facts, one consistent with guilt and one consistent with innocence, the appellant was entitled to the inference consistent with innocence; that the fact of indictment was not evidence of guilt. It reviewed the law as to second degree murder, manslaughter, justifiable and excusable homicide. In explaining manslaughter the court said, "If you are convinced from the evidence that the death resulted from merely unlawful conduct *on the part of the defendant* and there was no intention to take a life, then in that case, the defendant would be guilty of manslaughter." (emphasis added). We think the instructions made it abundantly clear to the jury that their verdict must be not guilty if they did not find beyond a reasonable doubt that the appellant was the one that caused the death of the deceased and we find no error in the refusal of the court to grant the specific instruction requested.[9]

---

9. The State argues that there was no sufficient evidence that the death was caused by someone else so as to warrant the requested instruction. On direct examination Luckel testified that he was struck and knocked down by the deceased. He said that there was a possibility that he could have "scuffled" with the deceased after being punched by him but that he did not know it as a fact. On cross-examination he denied that he had "scraped and swollen knuckles on his right hand" when he appeared at the preliminary hearing and there was no evidence that he had such an injury. He denied jumping on the deceased or hitting him after he got up from being knocked down by the deceased and he did not know if he "hit him at all." On re-direct he denied that he did "at anytime join in kicking or beating the deceased." The appellant testified that after his

## V

*"Was there a failure of due process of law when the lower court was precluded from considering the testimony before the grand jury by a failure to have that testimony recorded?"*

## VI

*"Should the indictment which was returned have been one of manslaughter only?"*

These questions are presented by the appellant in contending that the lower court erred in denying a motion to dismiss the indictment. He contends that by the testimony presented at the preliminary hearing, the evidence before the grand jury could not have been sufficient to warrant the return of an indictment for murder but only for manslaughter. He urges that the public local law of Prince George's County requires that when a clerk to the grand jury is appointed it is mandatory that he record the testimony before that body. He complains that the testimony leading to his indictment was not recorded and thus the lower court was precluded from examining it to ascertain if the testimony was sufficient to warrant the indictment. He asserts that he was therefore denied due process of law.

It is the well settled rule that the competency of testimony before the grand jury will not be inquired into by the courts and is no ground to dismiss an indictment. *Pick v. State,* 143 Md. 192, 196. Compare *Leon v. State,* 180 Md. 279. In *Bernard v. Warden,* 187 Md. 273 the Court held that the question of the

---

encounter with the guard he went to the guard's car to tear out the radio so the guard could not call for help and heard "scuffling" and saw 5 or 6 inches of Luckel's back. "It was moving in a rotating motion. I don't know how to describe it, but it was moving like he was maybe throwing punches or something." He could not see Luckel's hands or the guard's body but he heard somebody moan. The physician who performed the autopsy testified that the body of the deceased had multiple abrasions on both knees and on the face and chin. The upper and lower eye lids were blue and swollen. There were multiple skin abrasions on the right hand over the knuckles. Internal examination of the head showed bruising or hemorrhage of each temporal muscle. Five ribs on the left side were fractured with "subplural hemorrhage" present. The actual cause of death was that the deceased vomitted while unconscious and died of aspiration.

legal sufficiency of the evidence before the grand jury could not be raised in a *habeas corpus* proceeding and did not determine whether it could be inquired into on a direct appeal, "by motion to quash or otherwise." But it said, page 280, "It is generally held, however, that if there is some evidence to support the indictment, the courts will not inquire into its sufficiency." See *Piracci v. State,* 207 Md. 499, 515; *Strait v. Beall,* 198 Md. 677, 679. In *Costello v. United States,* 350 U. S. 359, the Supreme Court said, at page 363:

> "If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."

See also *United States v. Blue,* 384 U. S. 251; *Lawn v. United States,* 355 U. S. 339. We adopt the rationale of *Costello* and hold that an indictment may not be challenged on the ground that there was insufficient evidence before the grand jury.[10] We find that the lower court did not err in the denial of the motion to dismiss the indictment.

In view of our holding we need not consider the other allegations raised by the appellant with respect to these questions.

---

10. We distinguish the rulings in the line of cases represented by *Dennis v. United States,* 384 U. S. 855 and *Pittsburgh Plate Glass Co. v. United States,* 360 U. S. 395. By those cases the "particularized need," which if demonstrated by the defendant may make testimony before the grand jury subject to his review, relates to the fairness of the trial and not to the validity of the indictment.

## VII

*"Did the appellee's affirmative representation to the jury that its key witness waived all immunity, when it knew that his testimony was providing him that immunity, prejudice the appellant's case and thereby violate due process of law?"*

In his brief the appellant refers to the testimony of Luckel offered by the State. Luckel said he was not served with a warrant and was not placed under arrest. He was then asked if he made any deals with anybody and counsel's objection to that question was overruled. His answer was no. He was then asked, "Did anybody offer you any deals before you talked to them (the police) or while you were talking to them?" No objection was made and the witness answered, "No, sir." Later in his testimony he was asked, "Subsequent to this time that you talked at Oxon Hill Station and up to this date, this time and this place, has anybody offered you any deals?" The witness answered, "No, sir," without objection made. As part of his case the appellant introduced into evidence by stipulation a letter from Luckel's attorney which stated that Luckel "was not and is not now charged with any crime." We think that the substance of the challenged testimony came in without objection and that the point is not properly before us. Md. Rules, 1085. In any event, in view of the evidence offered by the appellant he was in no way prejudiced by the testimony of which he now complains.[11]

*Judgment affirmed.*

---

11. We note that absent a statute compelling a witness to testify and granting immunity if so compelled, if he wants the privilege against self-incrimination he must claim it. Neither the State nor the federal constitutional provision precludes a witness from testifying, voluntarily, to matters which may incriminate him. *State v. Panagoulis*, 3 Md. App. 330, 338, note 7. Thus Luckel did not obtain immunity by testifying at the trial without claiming the privilege. He stated that he did not testify before the grand jury.